IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| KATHY BANKS HUNT and STEVEN HUNT,<br>    Plaintiff,<br><br>vs.<br><br>NORTHWEST SUBURBAN COMMUNITY HOSPITAL, Inc., FOREST HEALTH SERVICES Corp., BARIATRIC TREATMENT CENTERS OF ILLINOIS d/b/a BARIATRIC TREATMENT CENTER, BARIATRIC TREATMENT SPECIALISTS OF ILLINOIS, S.C., BRIAN BOE, M.D., and KENT HESS, M.D.,<br>    Defendant. | Case No. 03 C 50250<br><br>Magistrate Judge<br>P. Michael Mahoney |

FILED

MAY 31 2007

MICHAEL W. DOBBINS, CLERK
UNITED STATES DISTRICT COURT

## MEMORANDUM OPINION AND ORDER & REPORT AND RECOMMENDATION

On March 13, 2007, Plaintiffs filed the "Motion to Exclude Defendants' Expert Testimony and For Summary Judgment" which is the subject of this order. Plaintiffs' Motion alleges that because Defendants' expert reports do not meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(B), the experts should be precluded from testifying. Further, without the benefit of expert testimony, Plaintiff alleges that Defendants are unable to mount a defense, thereby warranting summary judgment in Plaintiffs' favor. In the alternative, Plaintiffs seek leave to depose Defendants' experts at Defendants' expense.

Before the summary judgment issue is reached, the court must first determine the sufficiency of Defendants' expert reports under Rule 26(a)(2). After outlining the requirements of Rule 26, the court will address each of Defendants' expert reports in turn in an effort to

1

determine wether the Plaintiff is entitled to the relief requested.

I. Obligation to Disclose Expert Reports:

Federal Rule of Civil Procedure 26(a)(2) obliges a party which has retained an expert witness to provide a written report detailing the expert's opinions, the information relied upon in forming those opinions, and the expert's qualifications, compensation and experience. The text of the Rule states:

> (a) Required Disclosures; Methods to Discover Additional Matter. . . .
> (2) Disclosures of Expert Testimony.
>     (A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rule 702, 703, or 705 of the Federal Rules of Evidence.
>     (B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
>     (C) . . . The parties shall supplement these disclosures when required under subdivision (e)(1).

Fed.R.Civ.P.26(a)(2). Expert reports must be "detailed and complete" so that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998) (holding that the report "must include the 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions.")

The Seventh Circuit has also noted that the "'incentive for total disclosure' is the threat that expert testimony not disclosed in accordance with the rule can be excluded pursuant to Rule 37(c)(1)." *Id.* If the report contains opinions which are incomplete in some respect, the court enjoys the discretion to limit the expert's testimony only to those opinions expressed in their report, rather than striking the expert outright. *Id.* (citing *A Practitioner's Guide: Federal Rule of Civil Procedure 26(a)- Automatic Disclosure*, 47 Syracuse L. Rev. 225, 255 (1996)).

II. Defendants Northwest Suburban Community Hospital, Forest Health Services & Bariatric Treatment Centers of Illinois

A. Dr. Jorgenson:

Dr. Jorgenson's Rule 26(a)(2) report complies with the rule insofar as it disclosed his curriculum vitae, publications, fee schedule and testimonial history. However, Plaintiff claims the report fails to adequately disclose the data and information considered by Dr. Jorgenson and fails to adequately disclose the basis and reasons underlying Dr. Jorgenson's opinions.

In Dr. Jorgenson's two page report, he states:

> I have had the opportunity to review Kathy Banks Hunt's medical records as well as certain deposition transcripts, *including, but not limited to*, Ms. Hunt's medical records from Northwest Suburban Community Hospital, Bariatric Specialists of Illinois, and the University of Iowa, as well as deposition transcripts, *including but not limited to* the transcripts of Dr. Brian Boe; Mr. Kestus Simkus; Dr. Kent Hess; Kathy Banks Hunt, Volumes I & II; the various sessions of Dr. Rolland Taylor's depositions, and Dr Harry Jacob's deposition transcripts.

Exhibit 1 to Plaintiffs' Motion at 10 (emphasis added). The references to unspecified medical records and transcripts suggests that Dr. Jorgenson considered records and depositions which were not brought to Plaintiffs' attention. This raises the possibility that Plaintiffs could be subjected to an ambush at trial. This is unacceptable. Rule

3

26(a)(2) requires the disclosure of "the data or other information considered by the witness in forming the opinions." Dr. Jorgenson's report is insufficient insofar as it references unspecified medical records and depositions considered by Dr. Jorgenson in formulating his opinions but undisclosed to the Plaintiffs.

Further, Dr. Jorgenson's report expresses an opinion that it was "reasonable, appropriate and within the standard of care" to have a protocol and plans in place to transfer patients from Northwest Suburban Community Hospital to other nearby facilities in the event that an ICU or other specialty services become required, as opposed to having an ICU and specialists on hand. *See* Exhibit 1 to Plaintiffs' Statement of Material Facts. However, no protocol or plans were cited, leaving Plaintiffs guessing as to what supports Dr. Jorgenson's opinion and whether he had actually reviewed such protocols or plans before reaching this conclusion.

The court will not allow defense experts to testify concerning opinions based upon unspecified records, depositions and plans. Nevertheless, the Magistrate Judge is not convinced that striking Dr. Jorgenson's testimony is the appropriate remedy for the faults in this expert report. Instead, the Magistrate Judge grants Plaintiffs' motion in part by allowing Plaintiffs leave to depose Dr. Jorgenson for a reasonable amount of time not to exceed three hours. The first hour of Dr. Jorgenson's deposition will be paid for by Defendants Northwest Suburban Community Hospital, Forest Health Services & Bariatric Treatment Centers of Illinois. Plaintiffs are allowed to continue the deposition beyond the first hour at their own expense should they choose to do so. Dr. Jorgenson's deposition is to be conducted as soon as possible.

## III. Defendants Bariatric Specialists of Illinois, S.C., and Brian Boe, M.D.

### A. Dr. MacDonald:

Dr. MacDonald has disclosed his curriculum vitae, publications, fee schedule and testimonial history as required by Rule 26(a)(2). Dr. MacDonald's report lists in a single paragraph the material reviewed by Dr. MacDonald and then goes on to discuss the opinions reached without pinpointing material specifically in support of his many opinions. Doctor MacDonald listed twenty different medical records, twenty-one depositions, the pleadings, discovery and an unspecified number of hospital policies and procedures as the basis for his opinions. Much of the report includes conclusory statements that are not supported by reference to any particular evidence or reasoning.

For example, Dr. MacDonald opines that Ms. Hunt "was administered an appropriate dose of Lovenox prior to surgery. The Lovenox was appropriately stopped in a timely fashion prior to surgery." Dr. MacDonald's Report at 3, ¶ 3. Explanations as to *how* and *why* Dr. MacDonald arrived at the conclusion that Lovenox was appropriately administered are not provided.

Further, Dr. MacDonald's report states his opinion that "at all times Dr. Brian Boe and the BSI surgeons and surgical assistants at Northwest Suburban Community Hospital complied with the standard of care . . . ." *Id.* at 1, ¶ 4. "Dr. Brian Boe and BSI advised Ms. Hunt of the risks inherent with this surgical procedure . . . ." *Id.* at 2, ¶ 5. However, there is no identification of the persons acting on behalf of BSI, leaving Plaintiffs to wonder who specifically complied with the standard of care and who specifically advised Ms. Hunt of the risks associated with surgery.

It is well established that expert reports must contain more than mere conclusions.

5

*Griffith v. Northeast Illinois Regional Commuter R.R.*, 233 F.R.D. 513, 519 (N.D. Ill. 2006). An expert's report which does nothing to substantiate the expert's opinion is worthless. *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997). "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exchange Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989) (citations omitted).

Although Dr. MacDonald's report refers generally to a mountain of resources which may indeed support the various opinions reached, Doctor MacDonald has failed to consistently indicate which particular materials support his various opinions. Nor has he adequately explained his reasoning in arriving at the opinions expressed in his report.

In light of the faults with Dr. MacDonald's report, the Magistrate Judge grants Plaintiffs leave to depose Dr. MacDonald for a reasonable time not to exceed three hours. The first hour of Dr. MacDonald's deposition will be paid for by Defendants Bariatric Specialists of Illinois, S.C., and Brian Boe, M.D. Plaintiffs are allowed to continue the deposition beyond the first hour at their own expense should they choose to do so. Dr. MacDonald's deposition is to be conducted as soon as possible.

B. Dr. Chediak:

Doctor Chediak's report does a much better job of complying with Rule 26(a)(2). Dr. MacDonald's report discloses his curriculum vitae, publications, fee schedule, testimonial history, opinions and the information relied upon in formulating those opinions. Plaintiffs' characterization of Dr. Chediak's report as deficient under Rule 26(a)(2) simply do not hold up.

For example, Dr. Chediak claims that it "is possible that there may have been some level of anticoagulation in the patient's blood at the time of surgery from the Lovenox; however, the

level was appropriate for surgery to commence." Dr. Chediak's Report at 3, ¶1. Plaintiffs claim that Dr. Chediak fails to state the basis for this opinion and fails to state the degree of anticoagulation in Ms. Hunt's blood at the time of surgery, thereby requiring Plaintiffs to depose Dr. Chediak in order to resolve these issues.

However, by reading the rest of the paragraph that Plaintiffs lifted the above quote from, it becomes clear that Dr. Chediak's report does explain the basis and reasoning for his opinion that the level of anticoagulation in Ms. Hunt's blood was appropriate. Namely, Dr. Chediak's opinion is based upon the half-life of Lovenox as well as the INR and PT studies performed on Ms. Hunt forty minutes prior to her surgery. *Id.* Based on the passage of time (13 hours between her last dose of Lovenox and the commencement of surgery), the Lovenox present in Ms. Hunt's blood stream was down to 25%. *Id.* Therefore, Plaintiffs' claim that Dr. Chediak's opinion is unsupported misses the mark.

Dr. Chediak also offered his opinion that "had Ms. Hunt accepted blood products earlier in her post-operative course, she would have, more likely than not, had a shorter post-operative hospital stay." *Id.* at 5, ¶ 4. Plaintiffs characterize this opinion as unsupported because it "fails to identify 'post-operative course' and fails to identify 'shorter stay.'" Plaintiffs' Memorandum in Support at 12. The court recognizes that Dr. Chediak's opinion is somewhat of a generalization, and as a generalization, it is not intended to provide specific ratios between the time Plaintiff accepts blood products and the end of her post-operative course. Rather, it simply means that the sooner Ms. Hunt accepted blood products, the sooner her post-operative course would have been completed. The lack of greater detail in this regard does not pose a risk of ambush at trial.

The Magistrate Judge is not convinced that Dr. Chediak's report is deficient under Rule 26(a)(2). Plaintiffs' motion is denied insofar as it applies to Dr. Chediak.

## IV. Defendant Kent Hess, M.D.

### A. Dr. Crowther & Dr. Szperski:

Plaintiffs attack Dr. Crowther's report based upon his status as a Canadian physician allegedly unfamiliar with the standard of care in the United States, and the fact that his curriculum vitae fails to indicate his familiarity with Lovenox, his experience treating Jehovah's Witnesses, and his experience with Roux-En-Y bariatric surgery. Plaintiffs' Memorandum in Support at 7.

Plaintiff attacks Dr. Szperski's report by pointing out that he is not a bariatric surgeon, has not participated in the postoperative care of a gastric bypass patient, and has not participated in the postoperative care of a Jehovah's Witness on anticoagulant therapy who refused blood products.

Plaintiffs challenge these doctors' *qualifications* as experts, not their *disclosures* under 26(a)(2). Challenges to an expert witness' qualifications are properly the subject of either a *Daubert* motion or a motion in limine. The Plaintiffs should direct their challenges to Dr. Crowther and Dr. Szperski in either of these manners since Rules 26(a)(2) and 37(c)(1) are inappropriate channels for such an undertaking. Plaintiffs' motion is denied as to Dr. Crowther and Dr. Szperski.

## V. Conclusion

For the foregoing reasons, Plaintiffs' motion is granted in part by allowing the depositions of Dr. Jorgenson and Dr. MacDonald as stated above. Because the Magistrate Judge has declined to strike the expert witnesses as requested, Plaintiffs' are not entitled to summary judgment. Therefore, it is the recommendation of the Magistrate Judge that Plaintiffs' motion be

denied insofar as it seeks summary judgment.

ENTER:

*P. Michael Mahoney* (signature)

P. MICHAEL MAHONEY, MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

DATE: 5/31/07