# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| KATHY BANKS HUNT and STEVEN HUNT, | ) | Case No. 03 C 50250 |
|        Plaintiff, | ) | |
| | ) | Magistrate Judge |
|    vs. | ) | P. Michael Mahoney |
| | ) | |
| NORTHWEST SUBURBAN COMMUNITY HOSPITAL, Inc., FOREST HEALTH SERVICES Corp., BARIATRIC TREATMENT CENTERS OF ILLINOIS d/b/a BARIATRIC TREATMENT CENTER, BARIATRIC TREATMENT SPECIALISTS OF ILLINOIS, S.C., BRIAN BOE, M.D., and KENT HESS, M.D., | ) ) ) ) ) ) ) ) ) | |
|        Defendant. | ) | |


## MEMORANDUM OPINION AND ORDER

This lawsuit was filed on June 18, 2003. From August 8, 2003 until November 14, 2008, defendants Dr. Brian Boe and his former employer, Bariatric Specialists of Illinois S.C. ("BSI") were represented by Michael Walsh and Robert Huff of the law firm Bollinger, Ruberry and Garvey ("Bollinger"). On August 19, 2005, Richard Tauras, also of Bollinger, filed his appearance on behalf of Dr. Boe and BSI. On November 6, 2008, Walsh and Tauras sought to withdraw as counsels for Dr. Boe and BSI, alleging that they had legal bills that had gone unpaid since September 2006, and that they had "essentially provided Defendants' [*sic*] with free legal assistance in this matter for well over two years[.]" (Mot. for Leave of Court to Withdraw as Counsel for Defs. BSI and Dr. Boe 2–3.) Robert Huff also sought to withdraw as counsel because he was no longer employed at Bollinger. The court granted Dr. Boe's and BSI's motion for Tauras, Walsh, and Huff to withdraw on November 14, 2008, and allowed the defendants

until December 3, 2008 to retain counsel. (Court Doc. No. 409.)

On December 15, 2008, Dr. Boe filed a pro se appearance. In a letter dated January 5, 2009, Dr. Boe informed the court that he was experiencing difficulties retaining counsel, and requested additional time to do so, which the court granted. On January 21, 2009, attorneys Porter, Shelly, and Langhenry, of the law firm Langhenry, Gillen, Lundquist, and Johnson, LLC, filed appearances for Dr. Boe. When Dr. Boe's new counsel requested copies of Dr. Boe's case file from Walsh, Walsh denied the request, asserting an attorney's retaining lien for unpaid legal services. Dr. Boe filed this motion to compel transfer of the file.

Illinois common law recognizes an attorney's retaining lien. *See Twin Sewer and Water, Inc. et al. v. Midwest Bank and Trust Co. et al.*, 308 Ill. App. 3d 662, 720 N.E.2d 636 (Ill. App. Ct. 1999). Because Illinois common law recognizes an attorney's retaining lien, so too will the federal courts in this case. The lien prescribes an attorney the right to retain a client's documents and property until the attorney's fees are paid or the client posts a security for payment. *Carrizales v. Bd. of Educ. of the Rockford Sch. Dist., No. 205*, 2004 U.S. Dist. LEXIS 21454, at *5 (N.D. Ill. Oct. 22, 2004). "This right is enforceable against the client, third parties, and the trustee in bankruptcy." *In re Browy*, 527 F.2d 799, 801 (7th Cir. 1976) (internal citations omitted). A retaining lien is a "passive lien," meaning the court cannot actively enforce it. *Lucky-Goldstar Int'l, Inc. v. Int'l Manuf. Sale Co., Inc.*, 636 F. Supp. 1059, 1061 (N.D. Ill. 1986). Thus, the lien rests entirely on the attorney's "right to retain possession until the bill is paid." *Id*.

This court may compel transfer of a case file notwithstanding a valid retaining lien. *See Carrizales*, 2004 U.S. Dist. LEXIS 21454, at *7–8 (ordering an attorney, who was asserting a retaining lien, to turn over to a former client all documents that were necessary for the client to

2

pursue her cause of action). A court faced with a motion to compel transfer of materials subject to an attorney's retaining lien must balance the attorney's right to secure payment for services with the client's right to litigate his or her case, and the lien's effect on the court's calendar. *Id.* at *6. This court considers the following factors, set forth in *Lucky-Goldstar*, when balancing whether to compel production of materials subject to an attorney's retaining lien:

> (1) the financial situation of the client, (2) the sophistication of the client, (3) whether the fee is reasonable, (4) whether the client clearly understood and agreed to pay the amount now owing, (5) whether the imposition of the retaining lien would prejudice the important interests of the client or other parties, (6) whether to impose the lien would result in fraud or gross imposition by the client, and (7) whether there are less stringent means by which this matter can be resolved or by which the amount owing can be secured.

*Id.* at *6–7 (*citing Lucky-Goldstar*, 636 F. Supp. at 1063).

In this case, Dr. Boe's need for access to his case file to aid in his defense outweighs Bollinger's right to retain his case file. First, Dr. Boe appears unable to pay Bollinger's fees. Dr. Boe's financial status is not entirely known to the court, but he asserts in his reply brief that he is not in a position to pay the fees owed to Bollinger. (Def.'s Reply at 5.) Dr. Boe's assertion is supported by his January 5, 2009 letter, which described failed attempts to retain counsel after Bollinger's withdrawal. In his letter, Dr. Boe attributed the difficulty to retain new counsel to his "having no insurance coverage and lack of personal assets to cover legal and court costs." (Court Doc. No. 432.) The court is unaware as to what Dr. Boe's fee arrangement is with Langhenry, Gillen, Lundquist, and Johnson, LLC, and in some cases, retention of new counsel might suggest availability of financial resources. But, here, Dr. Boe's statements suggest that he is unable to pay Bollinger's past due legal fees at this time, or to offer security in exchange for a relinquishment of the lien.

Dr. Boe's sophistication is also an important part of the balancing. If Dr. Boe were

sophisticated in the matters of litigation and insurance, the court may assume that he could represent himself pro se. This hypothetical, unfortunately for Bollinger, is not the situation here. Dr. Boe is unsophisticated in the matters of litigation and insurance. He paid into his employer's (BSI's) medical malpractice policy, which later turned out (allegedly unknown to Dr. Boe) to be a self-insured policy governed by BSI. When BSI declared bankruptcy, the insurance policy evaporated. He found himself as a defendant in a malpractice suit with no insurance and no representation. As his January 5, 2009 letter suggests, he has limited knowledge of litigation, which has stifled his ability to defend himself or to settle. He has demonstrated to this court an acute lack of sophistication in matters of litigation and insurance, and his need for representation is obvious.

Dr. Boe's understanding of the fee arrangement with Bollinger is also an important factor. If Dr. Boe had fully understood that the arrangement required payment from him, then his failure to pay would be less forgivable. But, that does not appear to be the situation here. Indeed, Bollinger's own actions may have compounded Dr. Boe's confusion.

According to Dr. Boe's January 5, 2009 letter, attorneys at Bollinger first began expressing apprehension about its past due fees approximately a year and half prior to withdrawal. Walsh even recommended, according to Dr. Boe, that Dr. Boe speak with administrators of Forest Health Services Corporation (the parent company to both BSI and Dr. Boe's current employer) about paying Bollinger's bills. (Court Doc. No. 432.) Despite the outstanding legal bills, the Bollinger law firm continued to represent Dr. Boe for over two years. (*See* Bollinger's Resp. at 4–5.)

The facts suggest that Dr. Boe was confused about his insurance policy, and about whether he should be paying his own legal bills. Bollinger's initial reluctance to withdraw and

to demand payment probably further muddied Dr. Boe's understanding of his responsibility vis á vis that of BSI to pay for Bollinger's representation. Once it became clear that payment was not forthcoming and that withdrawal would be necessary, Bollinger should have acted to do so. Had Bollinger withdrawn far enough prior to November 14, 2008, it may have avoided a retaining lien altogether. Bollinger's actions and continued representation, even after payments from the insurance provider had stopped, presented Dr. Boe with unclear expectations regarding the payment of fees. This factor weighs against Bollinger's right to retain Dr. Boe's case file.

Maybe the most important factor to consider is the prejudice that the retaining lien will cause Dr. Boe, the other parties, and the court. The prejudice to Dr. Boe is obvious: Dr. Boe cannot adequately assert his rights without access to his case file. This prejudice is substantial, especially given Dr. Boe's status as a defendant.

Prejudice to other parties is apparent too: by asserting this retaining lien, Bollinger has stalled the progression of this case. Parties to this action, both plaintiffs and defendants, need progress on the claims to accurately value their positions and to make decisions regarding litigation accordingly. The retaining lien has effectively stopped all parties' abilities to move forward.

This stagnation also affects the court, which has an important interest in seeing this case move forward. Filed in 2003, this case is one of the oldest on the court's docket. The court's interest in preserving its calendar and moving this case along is substantial, and further delay is not acceptable.

The Bollinger law firm argues that the "vast majority" of the documents in the file are obtainable from other sources (Bollinger's Resp. at 6), and that retaining them will not significantly prejudice the interests of Dr. Boe, any other party, or the court. Dr. Boe's new

attorneys believe that the case file contains more materials than just docket entries and medical charts (Def.'s Reply at 6), and that Dr. Boe's defense will be prejudiced by Bollinger's retention of the case file.

Contrary to Bollinger's argument, the materials in Dr. Boe's case file appear valuable; indeed, the parties would not be arguing about this issue if the case file contained worthless documents. Dr. Boe's interest in obtaining these valuable materials, especially coupled with the other parties' and the court's important interests in moving this case forward, outweighs Bollinger's interest in its retaining lien.

There remain three factors that the court has not yet directly addressed: whether Bollinger's fee is reasonable, whether to impose the lien will result in fraud or gross imposition by the client, and whether there are less stringent means by which this matter can be resolved or by which the amount owing can be secured. These factors were not argued at length by either party; therefore, the court will only briefly address them.

The reasonableness of Bollinger's fee is unknown; no billing statements were submitted. Assuming that Bollinger's fees are reasonable (and the court has no reason to believe that they are not), the weight of this factor is light and, given the other factors in this case, does not suffice to tip the scales in favor of Bollinger's interest in the retaining lien.

There are no facts to suggest that imposing the lien will result in "fraud or gross imposition by the client." Without such a showing, this factor has little weight.

Finally, there is no evidence that less stringent means exist to settle this matter than for Dr. Boe's new counsel to take possession of Dr. Boe's case file. If Bollinger prefers, it may also provide Langhenry, Gillen, Lundquist, and Johnson, LLC with a copy of the case file while retaining the original. *See Twin Sewer and Water, Inc.*, 308 Ill. App. 3d at 673 (interpreting

Illinois case law to hold that providing a copy of the case file, while keeping the original, preserves the retaining lien).

Under the above balancing, Dr. Boe's interest in obtaining his case file to aid in his defense outweighs Bollinger's interest in its retaining lien.  The court orders Bollinger to submit all materials, or copies of those materials, related to Dr. Boe's defense within its possession, custody, or control to Langhenry, Gillen, Lundquist, and Johnson, LLC by April 14, 2009.  The court also grants Dr. Boe's motion to extend time to produce Dr. MacDonald for deposition.  The court orders Defendant to produce Dr. MacDonald for deposition by April 29, 2009.  The final pretrial conference is set for May 29, 2009 at 1:30 PM before the magistrate judge.

ENTER:

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: April 3, 2009